## Klapheke et al. v. Louisville Trust Co. et al.

### (Decided Jan. 25, 1935.)

ERNEST WOODWARD and WILBUR O. FIELDS for appellants.

BURWELL K. MARSHALL for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

From a judgment of the Jefferson circuit court, chancery branch, awarding the appellants, Charles G. Klapheke and Joseph A. Schoo, the sum of $500 against the defendants below, Louisville Trust Company and the Liberty Bank & Trust Company, for services alleged rendered the defendants, the plaintiffs have appealed, complaining that they did not recover the amount to which they were entitled, while the defendants have taken a cross-appeal upon the ground that plaintiffs were not entitled to anything. Appellants claim that as a "creditors' committee" they rendered services for the use and benefit of the appellees, for which they were entitled to recover the reasonable compensation of $1,000 each, in the sale and disposition of the assets and liquidation of the affairs of the O. K. Stove & Range Company. The defendant banks, here the appellees, on the other hand deny any liability for the admitted services rendered, upon the grounds that plaintiffs in so serving were appointed by the stockholders as a "stockholders' committee" and so acted in their interests.

It is undisputed and shown by the record that the appellants, Klapheke and Schoo, hereinafter referred to as plaintiffs, were stockholders of the O. K. Stove & Range Company (hereinafter referred to as the stove

company) of Louisville, Ky., and were in March, 1928, appointed as a "stockholders' committee" and authorized to carry out the stove company's sale contracts had with the Peerless Manufacturing Company, and to negotiate the sale of its personal and real property, subject to the approval of the stockholders. It appears that prior to such time, or in 1927, the stove company realized that its financial affairs had fallen into a desperate condition, due to business losses suffered during several previous years, leading the company to conclude that it was to its best interests to liquidate its business. To such end, at a meeting of the stockholders in June, 1927, it was voted by those representing three-fourths of its capital stock to sell out all its properties for the payment of its debts and its liquidation.

It appears that at this time the stove company had as its creditors only the two defendant banks and the Bankers' Bond Company, to which it owed debts amounting to approximately $150,000; also, that the banks, having become anxious as to realizing their full indebtedness and for the purpose of facilitating and expediting the immediate sale and disposition of the company's properties, guaranteed the payment of the bonding company's mortgage debt, leaving the two banks the stove company's only remaining creditors interested in the successful liquidation of the affairs of the company for the payment of its large indebtedness. Also it appears that the banks in this situation became apprehensive lest the stockholders would lose interest and fail to attend the stockholders' meetings to give the necessary authorization for company action required for carrying out its liquidation. Accordingly, at a meeting of the stockholders of the stove company held in March, 1928, representatives of the defendant banks, Messrs. Kammerer and Dosker, were present and joined in the discussion of matters involved in the company's liquidation when, upon their suggestion, the two plaintiffs and another, F. M. Van Antwerp, were appointed as a "stockholders' committee," as appears by the minutes of said meeting, which, so far as pertinent to the question here involved (the character of this committee and the service for which appointed) are as follows:

"Matters pertaining to the general condition of the Company were discussed at length. Mr.

Dosker presented a statement of receipts and disbursements.

"It was quite evident that someone should be charged with the responsibility of looking after the *interests of the stockholders,* making proper charges against Peerless for withdrawal and settling matters in general, the following motion was made by R. A. Robinson, 2nd by Mr. B. K. Marshall and carried unanimously.

"Resolved: That J. A. Schoo, Chas. G. Klapheke and F. M. Van Antwerp be appointed as a *committee to represent the stockholders* of the O. K. Stove & Range Company, with plenary power to act in connection with carrying out contracts with the Peerless Mfg. Co., to negotiate the sale of personal property and to do any and all other things that said *stockholders' committee* may deem proper and necessary in the liquidation of the assets of the Company and the winding up of its affairs. Further, to negotiate for the disposal of the real property, it being understood that terms of sale be submitted to stockholders and approved by them before sale can be consummated." (Italics ours.)

The minutes evidencing the passing of such resolution were signed by the stove company's president, Chas. G. Klapheke, one of the appellants here.

Such was the stove company's appointment and authorization of the plaintiffs as its stockholders' committee, so designated and appointed from the number of its stockholders for the declared purpose of representing the interests of the stockholders and to do any and all other things that they, as the said stockholders' committee, should deem proper and necessary in the liquidation of the company's assets.

Under this appointment, the three stockholders named proceeded to act and serve as such special committee in assisting the defendant banks in carrying out the company's sale contracts and the sale of its real estate involved in the company's liquidation.

The outcome of this liquidation was that an insufficient amount was received therefrom to pay in full the company's debt to the banks, requiring them to become purchasers of the company's real estate upon

its auction sale, to secure the collection of the money owing them.

Also it appears that the stove company instituted suit against the Peerless Manufacturing Company for an amount owing it under the terms of its sale contract. It recovered a less amount than sued for, which was turned over by the attorney in full to the banks, without deduction and payment therefrom of plaintiffs' claim made for compensation for their services rendered as such special committee.

It is to be noted that no provision was made in this stockholders' resolution appointing this special committee, with plenary powers, to represent the interests of the stockholders in the company's liquidation, thereafter to be effected and prosecuted in harmony and cooperation with the banks, for any payment to the committee for these special services they were appointed and directed to render. Also it appears that while plaintiffs allege that the services rendered by them to the banks under and pursuant to such appointment extended over a period of some three or four years and required their attendance at some fifty or more stockholders' meetings, in addition to other services rendered by them in looking after and checking the company's properties being sold and collecting its sale accounts, no claim was made during this long period by any of them against either of the banks, for whom they now claim they were working, or the stove company for payment in any amount of wage or salary for their services or that either the company or the banks owed them therefor. In fact, it was shown that during this time one of this committee, being hard pressed, asked for and secured a loan of some $600 from one of the banks, without either then or at any time making any claim that the bank owed him anything for these services which these three plaintiffs later claimed they were rendering the banks as members of this special or "creditors'" committee, as they later call it.

However, upon final liquidation of the company and after all of its assets had been sold and the entire proceeds paid over to the creditor banks, without leaving any surplus over for stockholders or with which the stove company might compensate them for their services rendered as its appointed "stockholders' committee," they, disappointed with such unsuccessful out-

come of the liquidation, presented claims to the banks for payment to each of them of the sum of $500, then claimed for the first time to be owing them for their services and which claim, submitted by letter, is as follows:

"May 27, 1932

"Liberty Bank & Trust Co.,

"Louisville Trust Co.,

"Dear Sirs:

"The stockholders committee of the O. K. Stove & Range Company have served in this capacity since March, 1928 in the interest of your bank, in which time the suit against the Peerless Manufacturing Company has been prosecuted and adjusted and a complete liquidation of the O. K. Stove & Range Company effected.

"For this service the Committee now expects compensation in the sum of $1500.00 (fifteen hundred dollars).

"This charge is based on approximately fifty meetings, some of which consumed the entire day aside from the work before and after each meeting. We have a complete file for your consideration substantiating the above.

"Please write check for one third to each of the following committee-men.

"Respectfully,

"Jos. A. Schoo

"F. M. Van Antwerp

"Chas. G. Klapheke"

The banks denied liability for the services rendered by the committee and declined to pay this bill presented them therefor. Thereupon Messrs. Schoo, Van Antwerp, and Klapheke, the members of the "special committee," filed this action against the banks for double the amount of their claims, seeking recovery of of $1,000 each for the services rendered as such committee in connection with the banks in carrying through the liquidation of the stove company, upon the ground that while so serving they had acted as a creditors' or

liquidating committee, which had been appointed at the suggestion of the banks, and for whose use and benefit the services were rendered, and without profit or benefit to themselves or the company.

Appellants contend that they early realized the shrinkage in the value of the stove company's assets would result in its failure to realize anything above the amount of its indebtedness, if so much, out of their sale, and that nothing would thereafter be left for distribution among the stockholders, and that this condition of things was also realized by the banks, who, nonetheless, used the committee and accepted the help and benefit of its services in the winding up of the company and in realizing upon the company's indebtedness as the company's only creditors. Plaintiffs contend that the banks, by their conduct in securing their appointment as a committee to assist and serve them in thus effecting the liquidation of the company—and by which only the banks were benefited—became impliedly obligated and liable to them for the payment of a reasonable compensation for the services rendered them at their request.

It may be here explained that Mr. Van Antwerp, a member of this special commitee and who joined as one of the plaintiffs in filing the suit, afterwards made some adjustment of his claim or abandoned it and withdrew from the prosecution, whereupon he was named and has since appeared as a defendant therein, and by amendment the remaining two plaintiffs reduced the amounts sued for to the sum of $2,000, or $1,000 each.

The learned chancellor who heard this case in its early stages, in considering a demurrer filed to the petition and passing thereon, in his opinion states:

"The petition is demurred to. The question thereby raised is whether the petition discloses any duty owed to the plaintiffs by the two creditor banks to pay for those services. A duty to pay for those services could arise only in one of three ways. (1) An express promise to pay. (2) An implied promise to pay found by fair construction in the agreement between the parties. (3) Where the services have been rendered by one not a volunteer, and have benefitted the one sought to be held liable therefor. In other words, there may be a quasi

contractual obligation to pay for services as well as an express or implied contractual one. * * *''

And to such effect and due to such considerations was it earlier held by this court in the case of Fahey v. ·Clarke, 80 Ky. 613, 4 Ky. Law Rep. 590, involving a somewhat similar question, where the court in discuss-ing it said:

"The remaining question as to the allowance to the trustee for his services, when not provided for by the deed of trust, he being a creditor, pre-sents but little difficulty in the light of recent adju-dications, modern and more enlightened practice. * * *

"The trustee Talbott had but a small claim comparatively. * * * It would be unjust to allow other creditors to profit by his care and judgment, and award him nothing for his trouble and respon-sibility, when he receives precisely the same pro rate on his debt as other creditors who could not have inferred from the contract or circumstances that he, being a creditor, undertook the discharge of the trust and the incident responsibilities with-out expecting any reward."

And so in the instant case it would appear that had there been anything remaining after the liquidation of the ·company's affairs and payment of its creditors, the plaintiffs would have clearly been entitled to have re-covered from the company, out of surplus funds going to the stockholders, a reasonable compensation for the services rendered by them and whereby they had profit-ed, if the undertaking of the special committee to serve as a liquidating committee for the company is to be ·construed, as it should, according to reason and justice. But it is quite another thing to say that these plaintiff stockholders are to be compensated for their services, rendered pursuant to the terms of their appointment to represent the interests of the stockholders as a "stockholders' committee," at the expense of the banks, or to their detriment as creditors, by payment out of the too meager funds of the corporation, represented by them, of stockholders' claims before those of its credi-tors were first paid in full. In fact, we deem this ques-tion is clearly thus determined adversely to the conten-tion of the plaintiffs by the provisions of section 561,

Kentucky Statutes, passed in 1893, which we regard as sufficient answer to appellants' insistence that in several earlier cases of this jurisdiction, cited by plaintiffs (but which were decided prior to its enactment) recovery was adjudged for similar special services.

Section 561 of the Statutes, providing for the liquidation and termination of the existence of corporations, in part expressly provides that:

"It shall be the duty of the officers to settle up its affairs and business as speedily as possible; * * * and all debts and demands against the corporation shall be paid in full before the officers receive anything."

It thus clearly appears that the committee, while acting and serving as that of the company, representing the interests of the stockholders and also as such their own, by this statutory provision is precluded from appropriating or diverting any of the corporation's funds for payment for their services until all the debts and demands against their company should have been first paid in full. In the instant case there were no funds of the corporation left to which they could look for compensation after the directed payment in full of its debts. The question then next arises: Were the facts and circumstances shown by the record as to the committee's appointment and services rendered pursuant thereto such as to reasonably support the inference of an implied promise or obligation on the part of the banks, which accepted their co-operative help, to pay therefor as upon a contract, or even as upon a quasi contractual obligation to make compensation for the services so rendered where, as here, it appears they were volunteered under and pursuant to the stockholders' resolution appointing them as their committee rather than by the defendants' employment or procurement? No unjust enrichment of the bank at the expense of the plaintiffs could in such case result or they be justly charged with the benefits and profits received from the services which were voluntarily rendered them.

We are of the opinion that the undisputed facts as to the parties' dealings and relationships, as hereinabove shown and set out, clearly establish that the services, for which payment of compensation is being

sought against the banks, were rendered by plaintiffs as a stockholders' committee and not by reason of any agreement, either expressed or implied, had or made with the banks to pay therefor, nor was either their conduct or relations with the banks, while engaged upon the joint work of liquidating the affairs of their company, such as justified the plaintiffs in assuming that they were, while so acting, so representing or serving the banks as to create a quasi contractual obligation to pay them for these services rendered as a stockholders' committee.

It appears to be clear that when the plaintiffs entered upon this service, for which they had been appointed by the stockholders as a stockholders' committee to represent the interests of the stockholders, pursuant to the resolution passed by them so providing, they expected by the very nature of this appointment nothing from the banks, but rather compensation from their company and from preserving the equity value of their stock through their so handling the company's affairs intrusted to them as to make it worth something after the payment of its debts or perhaps they expected to be additionally paid for their services by their corporation, even though no mention was made by the resolution appointing them as to what, if any, compensation should or would be paid them therefor. Such grounds upon which to imply a liability as to the banks—however they might justify the imposition of it upon the stove company—we conceive are not found to here exist. The appellants knew that the defendant banks were apprehensive in regard to collecting their debts and were dealing at arm's length with the company in trying to direct such liquidation of its affairs as might provide sufficient funds for the payment of its debts. Also, on the other hand, the company was attempting to itself retain some control over the liquidation of the company's affairs, to the end that enough might be saved of its wrecked business, through its careful and wise sale and liquidation, for its stockholders over and above the amount required for the payment of its debts, and it was upon such footing and for such purpose we find the services of the plaintiff committeemen were rendered. From this it would appear to follow that if the services were rendered by the plaintiffs to the stockholders or company, it—if funds remained with which to pay—should pay them therefor rather than that the

banks should be held liable therefor merely upon the plea that they were benefited as a result of the services.

The learned chancellor who last sat in the hearing of this case determined that each of the plaintiffs, Klapheke and Schoo, should recover $10 for each of the fifty stockholders' meetings attended by them, or $500 each; but also as these services were rendered equally to both the stockholders and the banks, they should recover only one-half of such amount from the defendant banks, and accordingly adjudged recovery against the banks to the two plaintiffs of $250 each, or for the sum of $500.

We are of the opinion that such ruling and determination of the case was, for the reasons hereinabove stated, erroneous; and the judgment is therefore reversed.